## HUTTIG v. JOHN PAUL LUMBER CO.

(Circuit Court of Appeals, Seventh Circuit. April 10, 1917. Rehearing Denied May 16, 1917.)

### No. 2403.

1. TRIAL ⬧178—MOTION FOR DIRECTED VERDICT—EFFECT.

On defendant's motion for a directed verdict, the trial judge was bound to accept the testimony favorable to plaintiff.

2. BROKERS ⬧88(3)—QUESTIONS FOR JURY—PROCURING CAUSE OF SALE.

In a broker's action for commissions on a sale of land to a corporation, evidence *held* insufficient to warrant an inference that plaintiff, through any acts of his own or of others on his behalf, was the procuring cause of the sale, though he had negotiated for a sale with M. and R., a stockholder in such corporation, and hence the court properly directed a verdict for defendant.

3. BROKERS ⬧86(1)—SUFFICIENCY OF EVIDENCE—CONJECTURE.

In a broker's action for commissions, plaintiff, upon whom the burden of proof rested, was not entitled to a verdict on conjecture.

Alschuler, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Western District of Wisconsin.

Action by Harry W. Huttig against the John Paul Lumber Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Huttig's declaration was based on the following contract:

"Chicago, August 8, 1912.

"H. W. Huttig, Muscatine, Iowa.

"Dear Sir: Referring to all of the holdings of the John Paul Lumber Co. in the La Fayette, Taylor, Madison, Jefferson, Wakulla counties in the state of Florida, with the exceptions of the ninety thousand acre tract contained in townships 6 south, R. 12 east; 7 south, 12 east; 8 south, 12 east; 9 south, 12 E.: 6 south, 13 E.; 7 south, 13 E.; 8 south, 13 E.; 9 south, 13 E.—all in La Fayette county, Florida, comprising with the above exception about (234,000 acres) two hundred and thirty-four thousand acres, we hereby authorize you to sell all of the above named 234,000 acres for $2,560,000, for which in case of sale we agree to pay you a commission of 5 per cent.; and we further agree to pay you a commission of 5 per cent. on the consummation of a sale of any part thereof; and we further agree to pay you a commission of 5 per cent. on any sale you may make thereof that is consummated, whatever the purchase price may be. We will allow you sixty days from date to get parties interested and to examine property and a reasonable time thereafter to examine timber and abstracts.

"Yours truly,      John Paul Lumber Company.
                                     "By R. W. Paul, V. Pt."

At the conclusion of all the evidence the court directed a verdict for defendant. This is assigned as error.

Wm. S. Oppenheim, of Chicago, Ill., for plaintiff in error.
Andrew Lees, of La Crosse, Wis., for defendant in error.

Before BAKER, MACK, and ALSCHULER, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). [1, 2] McMillan, a real estate broker in Chicago, in late July, 1912, met Musser, of Muscatine, Iowa, in Chicago and told him that the Florida

lands of defendant were for sale and asked him if he would be interested. Musser said that he would, and that one Roach and he were interested in lands in the same locality, and he thereupon called Roach on the phone. McMillan then wired defendant in Florida, and in response thereto R. H. and J. J. Paul, of defendant company, arranged to come to Chicago on August 8th. That day McMillan met them, and took them to plaintiff's room in a Chicago hotel. Plaintiff was a relative of Musser, lived at Muscatine, was engaged in the sash and door business, and occasionally sold property on commission. At plaintiff's room the contract in question was executed, and plaintiff employed McMillan to work thereunder. Musser was said to be the man with money, able to buy, and already interested in Florida lands. Roach was not financially able to make the proposed purchase. The Pauls had known Roach for several years, during which there had been negotiations between them concerning the sale of these lands. In our judgment, the evidence establishes beyond any reasonable inference to the contrary that the parties went to Muscatine the next day for the purpose of initiating a deal in which Musser was the new and dominating element, that at Muscatine such a deal became pending, and that neither plaintiff nor his agent McMillan was "the procuring cause" of any other deal. There is a dispute in the evidence whether, at the Muscatine meeting, Roach mentioned "associates." He testified that he named O'Brien, Howe, and Stephenson (who were fellow stockholders in Gulf Land Company, a Florida corporation) as associates who might become interested in the deal. Pauls testified that no one was mentioned but Musser and Roach. On the motion for a directed verdict the trial judge was bound to accept Roach's version, and he did so, but held that under the evidence it was immaterial whether the proffered deal was one with Musser and Roach, or with Musser, Roach and others, because neither plaintiff nor defendant contemplated a deal except with Musser in. We think he was right. McMillan originated the negotiation by presenting the question of purchase to Musser. McMillan went to Muscatine repeatedly to try to induce Musser to buy. Plaintiff also worked upon Musser. So far as this case is concerned, that was the extent and the end of their efforts. Officers of defendant also tried to forward the Roach and Musser deal. The pending deal was always referred to in conversations and in correspondence between the parties as the Roach and Musser deal. Musser's interest apparently continued until the last of September, when Roach told the Pauls (and McMillan did likewise in November) that Musser would not go on. And Musser in fact had no part or interest in the sale that was subsequently made.

In March, 1913, defendant sold a half interest to the Gulf Land Company, a Florida corporation, for $800,000, being $100,000 less than the lowest and last price made or authorized by defendant during the pendency of the Roach and Musser deal, or during the 60 days plaintiff had "to get parties interested." Gulf Land Company was organized in the spring of 1912. It was not mentioned by any one in connection with the Roach and Musser deal, and Roach was not authorized to act for it. Defendant had no knowledge of its existence till after Musser withdrew. Its president, O'Brien, testified without

dispute that he had long known about the Paul lands being for sale; that he knew the price the Pauls were asking prior to August 8, 1912; that neither plaintiff nor McMillan (whom he met a number of times after August 8th) ever said anything to him about the Paul lands; that the rules of the company required the approval of all stockholders for purchases of land; and that a purchase of the Paul lands by the company never interested him at all until he learned in the spring of 1913 that a half interest could be had for $800,000.

[3] We believe the trial judge was correct in telling the jury, in substance, that there was no basis in the evidence for a reasonable inference that plaintiff, through any acts of his own or of others on his behalf within the 60 days from August 8, 1912, was the procuring cause of the sale to the Gulf Land Company in March, 1913, and that a party upon whom lies the burden of proof is not entitled to a verdict on conjecture.

The judgment is affirmed.

ALSCHULER, Circuit Judge (dissenting). Without pointing out those parts of the evidence which induce my nonconcurrence, I will say that to my mind the record fairly presents controverted questions of material and controlling facts which should have been submitted to the jury: Whether at the Muscatine meeting it was in effect stated, and was understood by all concerned, that the persons then and thenceforth contemplated by the parties as the broker's prospective buyer were Roach and his associates in the ownership of large tracts of timber land lying adjacent to and about the Paul lands in question, regardless of whether or not Musser was interested in the purchase; whether, from the time of the Muscatine meeting, the negotiations, as there under consideration, were carried on by the Pauls with substantial continuity and without abandonment until the sale in question was effected; whether the Gulf Land Company was not as to this business a mere convenience to take title for its stockholders, directors, and officers, Roach and his associates, as the beneficiaries in the transaction; and whether or not plaintiff in error was the procuring cause of the making of the sale, through interesting in the property within the 60 days of the contract, persons willing and able to purchase it, and who as the result of being so interested, within reasonable time after the 60 day period did in fact consummate the purchase.

I believe the judgment should be reversed, and the cause remanded for new trial.